## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| TONY MIKE ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 5:25-cv-35 (MTT) |
| | ) | |
| JUSTIN DURDEN, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>ORDER</u>

This action arises from a traffic stop of plaintiff Tony Robinson initiated by
defendant Justin Durden. ECF 7 ¶¶ 25, 27. Robinson claims that defendants Durden,
Chief of Davisboro Police Department McKevis Cail, and the City of Davisboro ("the
City") violated state law and his constitutional rights. *Id*. ¶¶ 50-71. Cail and the City
move to dismiss Robinson's 42 U.S.C. § 1983 and state law claims against them based
on failure to effectuate proper service, lack of subject matter jurisdiction, and failure to
state a claim. ECF 5; 13.[1] Durden moves to dismiss all state law and constitutional

---

[1] Cail and the City filed a motion to dismiss the original complaint and a renewed motion to dismiss the
amended complaint. ECF 5; 13. These defendants maintain that the arguments raised in their first motion
to dismiss are not moot because "'the Court may nevertheless treat Defendant's motion as directed to the
amended complaint because the same defects in Plaintiff's original complaint reappear in the amended
complaint.'" ECF 13 at 2 n. 3 (quoting *Gandy v. VT Mae*, 2019 U.S. Dist. LEXIS 133654, at *4 n. 1., 2019
WL 4047614 (S.D. Ala. Aug. 7, 2019)) (internal citations omitted). Robinson responded to both motions to
dismiss. ECF 12; 23. Thus, the Court considers arguments raised in both motions and responses.

Furthermore, the Court notes that Robinson attached various exhibits to his response brief, including
documents from the Davisboro Police Department relating to Durden and 79 pages of policies and
procedures. ECF 23-1; 23-2; 23-3. The Eleventh Circuit has "repeatedly [] held that plaintiffs cannot
amend their complaint through a response to a motion to dismiss." *Burgess v. Religious Tech. Ctr., Inc.*,
600 Fed. App'x. 657, 665 (11th Cir. 2015)). Because Robinson did not incorporate by reference the
Davisboro Police Department documents in the amended complaint or attach them thereto, the Court
disregards those documents (ECF 23-1) and any facts in Robinson's response that were not alleged in
the amended complaint. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th
Cir. 1997) (per curiam). The Court will consider the policies and procedures attached to Robinson's

claims against him except for Robinson's claims premised on violations of the Fourth Amendment. ECF 15 at 1. Finally, as discussed below, the Court ordered the parties to address whether the defendants sued in their individual capacities are entitled to qualified immunity.

## I. BACKGROUND[2]

On January 16, 2023, Durden, a Davisboro police officer, initiated a traffic stop of Robinson "near the 2500 Block of Breezy Hill Road" in Washington County, Georgia. ECF 7 ¶¶ 25-28. According to Robinson, Durden was "outside the Davisboro City limits beyond the jurisdiction of the Davisboro Police Department" when he activated the lights of his police cruiser and initiated the traffic stop. *Id*. ¶ 28. Robinson stopped his vehicle and stepped out to inquire why he was being stopped. *Id*. ¶¶ 31-32. Durden, along with a "non-law enforcement officer," exited the police cruiser, placed their hands on their weapons, and yelled commands to Robinson to get back in his vehicle. *Id*. ¶¶ 29, 33. Robinson asked why he was stopped and stated they were outside the Davisboro City limits and outside the jurisdiction of the Davisboro Police. *Id*. ¶ 34. Durden began arguing with Robinson and told him he "did not have jurisdictional limits and can stop someone wherever he wants." *Id*. ¶¶ 35-36.

Durden then questioned Robinson. *Id*. ¶ 37. During questioning, Robinson attempted to remove ChapStick from his pocket. *Id*. ¶ 38. Durden grabbed Robinson's

---

response (ECF 23-2; 23-3) because they were incorporated by reference in the amended complaint and are central to Robinson's claims. *See* ECF 7 ¶¶ 10, 11, 14, 15, 16, 30, 45, 48, 50, 66, 68.

[2] These facts are drawn from the amended complaint, which differs significantly from the original complaint. *Compare* ECF 7 *with* ECF 1-2; 3-2. The Court will not look back to the facts alleged in the original complaint, or the documents attached thereto, once the amended complaint is filed. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (holding that the filing of an amended pleading renders the previous pleading a "legal nullity").

arm and Robinson "snatch[ed] his arm away," "causing injury to [Robinson's] arm." *Id*.
¶¶ 38-39. Durden then told Robinson he was allowed to leave, which he did. *Id*. ¶¶ 40;
41.

## II. STANDARD

The Federal Rules of Civil Procedure require that a pleading contain "a short and
plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.
8(a)(2). To avoid dismissal pursuant to Rule 12(b)(6), "a complaint must contain
sufficient factual matter … to 'state a claim to relief that is plausible on its face.'"
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 570 (2007)). A claim is facially plausible when "the court [can] draw the
reasonable inference that the defendant is liable for the misconduct alleged." *Id*.
"Factual allegations that are 'merely consistent with a defendant's liability' fall short of
being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir.
2012) (quoting *Iqbal*, 556 U.S. at 678).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and
the reasonable inferences therefrom are construed in the light most favorable to the
plaintiff." *FindWhat Inv. Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011)
(quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). But
"conclusory allegations, unwarranted deductions of facts or legal conclusions
masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*,
297 F.3d 1182, 1188 (11th Cir. 2002). The complaint must "give the defendant fair
notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S.
at 555. Where there are dispositive issues of law, a court may dismiss a claim

regardless of the alleged facts. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018).

## III. DISCUSSION

Robinson asserts state law claims for "Negligence (training, supervision, retention), Assault, and Intentional Infliction of Emotional Distress" as well as claims for "violations of his civil rights including the Fourth, Fifth, Eighth, and Fourteenth Amendment Rights." ECF 7 ¶¶ 13, 43. For his constitutional claims, he maintains that he was illegally searched and seized in violation of the Fourth Amendment, subjected to excessive force in violation of the Eighth Amendment, and "abused, harassed, or subjected to unlawful detainment and questioning without due process" in violation of the "Fifth, Eighth, and Fourteenth Amendments." *Id.* ¶¶ 59-60, 63. Durden and Cail are each sued in their official and individual capacities.[3] *Id.* at 1.

The Court raised the issue of qualified immunity at a show-cause hearing[4] held on May 6, 2025, and ordered Robinson to file a brief addressing why the defendants

---

[3] Robinson does not specify which of his § 1983 and state law claims are against Durden and Cail in their official capacities. To the extent Robinson asserts claims against either in their official capacity, these claims fail. "Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly[.]" *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (internal citations omitted). Cail and Durden are municipal officers of the City, and any claim against them in their official capacities is tantamount to a claim against the City. Therefore, the official capacity claims, if any, against Cail and Durden are dismissed.

[4] Although the complaint and amended complaint expressly assert § 1983 claims (ECF 3-2; 7), Robinson's lawyers moved to remand on the grounds that "[a]lthough the complaint references 42 U.S.C. § 1983, this mention is too vague to establish federal jurisdiction." ECF 8 at 4. Because that assertion was false, the Court ordered Robinson's lawyers to show cause why they "should not be sanctioned for moving to remand on the basis that the complaint does not assert a Section 1983 claim when both the complaint and amended complaint specifically allege violations of Section 1983." ECF 17. Not satisfied with counsel's response (ECF 19), the Court ordered counsel to appear and show cause "why the Court should not dismiss with prejudice the Section 1983 claims asserted or attempted to be asserted in the complaint and amended complaint." ECF 20 at 1. Largely because of counsel's inexperience, the Court did not impose sanctions. However, after extended discussion, the Court ordered the parties to address the obvious qualified immunity issues raised by the amended complaint. ECF 21 at 1.

sued in their individual capacities—Durden and Cail—are not entitled to qualified immunity. ECF 21 at 1. "Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[T]he burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred … within the scope of his discretionary authority." *Estate of Cummings v. Davenport*, 906 F.3d 934, 943 (11th Cir. 2018). "Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply." *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)).

**A. Durden is Not Entitled to Qualified Immunity.**

Robinson contends "a genuine issue of material fact exists with respect to Defendant Durden's claim he was acting within his discretionary authority at the time of violation" because "at the time of the violation Defendant Durden was outside [h]is jurisdiction" and lacked authority to stop Robinson under Georgia law. ECF 26 at 11 (citing O.C.G.A. § 17-4-42).[5] The Court agrees that Durden has not established he was acting within his discretionary authority.

For purposes of qualified immunity, an official acts within his discretionary authority if he "perform[s] a legitimate job-related function … through means that [are]

---

[5] The relevance or applicability of the cited statute—governing the issuance of special warrants—is unclear to the Court. *See* O.C.G.A. § 17-4-42.

within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). The relevant inquiry is whether "'the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'" *Donald v. Norris*, 131 F.4th 1255, 1264 (11th Cir. 2025) (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)). Discretionary authority encompasses "all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." *Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017) (citation modified). The Eleventh Circuit has directed district courts to "look to state law to determine the scope of a state official's discretionary authority." *Estate of Cummings*, 906 F.3d at 940.

Durden has not shown that he had state law authority to stop Robinson under the circumstances alleged. "Under Georgia law, police officers are authorized to make warrantless arrests for offenses committed in the officer's presence, even if the officer is outside his jurisdiction." *Wilson v. Miller*, 650 Fed. App'x. 676, 681 (11th Cir. 2016) (citing O.C.G.A. § 17-4-20(a)(2)(A) and collecting cases) (emphasis omitted). But Durden does not argue that he was performing a legitimate job-related function when he stopped Robinson or that Robinson was committing an offense in his presence. *See generally* ECF 15; *cf. Wilson*, 650 Fed. App'x. at 681 (officer operating outside his jurisdiction was authorized to act under Georgia law and was entitled to raise the shield of qualified immunity); *Robinson v. Ash,* 805 Fed. App'x 634, 637-38 (11th Cir. 2020) (officer operating outside his jurisdiction exceeded his authority under Alabama law and could not raise the shield of qualified immunity); *Rebalko v. City of Coral Springs,* 552 F. Supp. 3d 1285, 1302 (S.D. Fla. 2020) (officers operating outside their jurisdiction

exceeded their authority under Florida law and could not raise the shield of qualified immunity). Instead, Durden simply contends, citing no authority, that "the Complaint sets [sic] alleges … a discretionary act." ECF 15 ¶ 1; 28 at 4. "A 'bald assertion by the defendant that the complained-of actions were … within the scope of his discretionary authority' is insufficient." *Estate of Cummings,* 906 F.3d at 940 (quoting *Barker v. Norman*, 651 F.2d 1107, 1124-25 (5th Cir. July 1981)[6]).

Accordingly, Durden is not entitled to raise the shield of qualified immunity at this time.[7]

**B. Robinson Does Not State a Constitutional Claim Against Durden Beyond the Fourth Amendment.**

Robinson asserts that "[u]nder the Fourth Amendment of the United States and Georgia Constitutions Plaintiff has an absolute right to not be unreasonably stopped and harassed by law enforcement." ECF 7 ¶ 58. He likewise maintains that "[u]nder the Fifth, Eighth and Fourteenth Amendments of the United States and Georgia Constitutions, Plaintiff has an absolute right to not be abused, harassed, or subjected to unlawful detainment and questioning without due process." *Id*. ¶ 59. Durden does not move to dismiss any of Robinson's claims arising under the Fourth Amendment. ECF 15 at 1. As to the other constitutional claims, Durden maintains that Robinson has not any alleged facts to support a deprivation under the Fifth, Eighth, or Fourteenth Amendments. *Id*. ¶¶ 3-5.

---

[6] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[7] Based on facts discussed in Robinson's briefs, but not alleged in the amended complaint, the Court understands why Durden does not, at this stage, argue more forcefully that he was acting within his discretionary authority.

Robinson argues that he states a Fifth and Fourteenth Amendment claim because the traffic stop initiated by Durden "outside the jurisdiction of the Davisboro Police" violated Robinson's "right to travel." ECF 18 at 5. But the constitutional right to travel "protects interstate travelers against two sets of burdens: 'the erection of actual barriers to interstate movement' and 'being treated differently' from intrastate travelers." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 276-77 (1993) (quoting *Zobel v. Williams*, 457 U.S. 55, 60 n.6 (1982)). Neither set of burdens is implicated here. And Robinson's only reference to Fifth and Fourteenth Amendment claims in the complaint is in connection with his specific allegations implicating his Fourth Amendment rights. *See* ECF 7 ¶¶ 59, 62; *Shimomura v. Carlson*, 811 F.3d 349, 361 (10th Cir. 2015) (explaining that the constitutional right to be free from warrantless arrest absent probable cause arises under the Fourth Amendment, not the Fifth and Fourteenth Amendments' Due Process Clauses).

Finally, Robinson contends that he states an Eighth Amendment claim because he was subjected to "cruel and unusual punishment" when he was "illegal[lly] stop[ped]" and "then injured by Defendant Durden when he attempted to remove ChapStick from his pocket." ECF 18 at 6. But the Eighth Amendment does not apply to the circumstances alleged. "[T]he Fourth Amendment covers arrestees, the Eighth Amendment covers prisoners, and the Fourteenth Amendment covers 'those who exist in the in-between—pretrial detainees.'" *Crocker v. Beatty,* 995 F.3d 1232, 1246 (11th Cir. 2021) (quoting *Piazza*, 923 F.3d at 952).

Accordingly, any constitutional claims against Durden in his individual capacity, aside from those arising under the Fourth Amendment, are **DISMISSED without prejudice** for failure to state a claim.

**C. Robinson's State Law Claims Against Durden May Proceed.**

In Georgia, "[p]ublic agents are immune from liability for their discretionary acts unless they are done with malice or intent to injure." *Taylor v. Waldo,* 309 Ga. App. 108, 111, 709 S.E.2d 278 (2011). Durden argues that he is entitled to official immunity because the complaint alleges "discretionary act[s]," and Robinson has failed to allege malice or intent to injure. ECF 15 ¶¶ 1-2. As discussed extensively in the Court's analysis on qualified immunity, Durden cites no authority to support his assertion that he was engaged in discretionary conduct when he initiated a traffic stop outside his jurisdiction. ECF 15; 28; *cf. Taylor,* 309 Ga. App. at 110 ("[E]ven if the officers did not have probable cause to arrest [Plaintiff], they had the authority and discretion to arrest outside their jurisdiction for offenses committed in their presence.").

Thus, Durden has failed to establish a basis for official immunity, and his motion to dismiss the state law claims against him is **DENIED**.

**D. Cail and the City's Motions to Dismiss for Failure to Effect Proper Service**[8]

Cail and the City move to dismiss the claims against them without prejudice for failure to effect proper service. ECF 5 at 16-18; 13 at 10-11. "Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served." *Pardazi v. Cullman Med. Ctr.,* 896 F.2d 1313,

---

[8] While the Notice of Removal states "[t]here is no record evidence that Plaintiff has attempted to effect service of process upon Defendant Justin Durden" (ECF 3 at 2), Durden does not move to dismiss based on failure to effect proper service. ECF 15.

1317 (11th Cir. 1990); *Prewitt Enters., Inc. v. OPEC,* 353 F.3d 916, 921 (11th Cir. 2003). Generally, the Court must consider jurisdictional issues first. *Posner v. Essex Ins. Co., Ltd*., 178 F.3d 1209, 1214 n.6 (11th Cir. 1999). Accordingly, where service of process is insufficient, it is "improper for the district court to ... reach[ ] the merits." *Jackson v. Warden, FCC Coleman - USP,* 259 Fed. App'x 181, 182-83 (11th Cir. 2007) (citation omitted) (vacating district court's order dismissing with prejudice for failure to state a claim and remanding with instructions to dismiss without prejudice for failure to properly serve defendants); *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 940 (11th Cir. 1997); *Courboin v. Scott,* 596 Fed. App'x 729, 735 (11th Cir. 2014) (finding no personal jurisdiction and stating that it "underst[oo]d and appreciate[d] the district court's motivation to address the merits of the claims in the alternative" but vacated "the portion of the district court's order dismissing the complaint with prejudice for failure to state a claim"). "A defendant's actual notice is not sufficient to cure defectively executed service." *Fitzpatrick v. Bank of N.Y. Mellon*, 580 Fed. App'x 690, 694 (11th Cir. 2014).

Under Federal Rule of Civil Procedure 4(m), the plaintiff must serve the defendants with all appropriate papers within ninety (90) days after the complaint is filed. "[A] state or local government or any other state-created governmental organization must be served in accordance with the laws of the state or by delivering a copy of the summons and complaint to its chief executive officer." *Gilbert v. City of Pine Lake,* 2022 U.S. App. LEXIS 10643 at *5-6, 2022 WL 1162087 (11th Cir. Apr. 20, 2022) (citing Fed. R. Civ. P. 4(j)(2)). Under Georgia law, service on a governmental organization shall be made by delivering the summons and complaint "to the chairman

of the board of commissioners, president of the council of trustees, mayor or city manager of the city, or to an agent authorized by appointment to receive service of process." O.C.G.A. § 9-11-4(e)(5).

According to the Notice of Removal, Robinson attempted to serve the City with a summons and complaint on January 3, 2025. ECF 3 ¶ 3. The City maintains this service was defective because it failed to comply with O.C.G.A. § 9-11-4(e)(5). *Id*. at 2 n.1. On January 24, 2025, Robinson unsuccessfully attempted to serve Cail. *Id*. ¶ 3; ECF 3-4 (denoting service "non est"). This action was removed on January 31, 2025. ECF 1. On March 3, 2025, Robinson filed state court sheriff's returns of service for the City and Cail. ECF 10; 11. The returns of service showed that Cail was served on February 10, 2025, and the City was served on February 28, 2025.

The City argues, and Robinson apparently no longer disputes,[9] that the City was not properly served with process before removal because Robinson served a city clerk whom the City never appointed or authorized to accept service on its behalf. ECF 5 at 16; 5-1 ¶¶ 2-4, 5-2 ¶¶ 2-5; 5-3 ¶¶ 2-3; 23 at 7-9. The Court agrees that Robinson did not serve a proper person under O.C.G.A. § 9-11-4(e)(5) by delivering the summons and complaint to the city clerk. Thus, Robinson's attempted service on the City on January 3, 2025 was deficient. And Robinson does not dispute that his attempt to serve Cail prior to removal was unsuccessful. ECF 23 at 8.

---

[9] In Robinson's response to the first motion to dismiss, he argues that serving the city clerk prior to removal was proper service of process on the City. ECF 12 at 4-5. He abandons this argument in his response to the renewed motion to dismiss, stating that his post-removal service was a "continuation of service that was not complete." ECF 23 at 8.

Next, the City argues that Robinson's post-removal attempts to serve the City and Cail were ineffective because Robinson served them only with state court process. ECF 25 at 16-18. 28 U.S.C. § 1448 provides:

> In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court.

Whether service of a state court summons following removal is sufficient under § 1448 is not a settled question. *See Jackson v. U.S. Army Corps of Eng'rs/Fort Gillem*, 2020 U.S. Dist. LEXIS 273787, at *9, 2020 WL 13998064 (N.D. Ga. Oct. 26, 2020) (citing 28 U.S.C. §1448 and noting conflict in authority); *Minter v. Showcase Sys., Inc.*, 641 F. Supp. 2d 597, 599-602 (S.D. Miss. 2009)). But "the majority view appears to favor allowing service of process to be completed under state law where process was issued but not served prior to removal." *Spiritbank v. McCarty*, 2009 U.S. Dist. LEXIS 34368, at *3-4, 2009 WL 1158747 (N.D. Okla. Apr. 22, 2009). Consistent with the majority view, the Court holds that the completion of state service of process upon the City and Cail following removal to this Court was proper service of process pursuant to 28 U.S.C. § 1448.[10]

Accordingly, Cail and the City's motions to dismiss for failure to effect proper service are **DENIED**.

---

[10] In *Jackson*, 2020 U.S. Dist. LEXIS 273787, at *9, the Northern District of Georgia held that service of an original state court summons post-removal is insufficient service of process and granted the defendant's motion to dismiss without prejudice. There, however, the service of state court process was also insufficient under Georgia law for failure to comply with O.C.G.A. § 9-11-4-(e)(1)(A) and the plaintiff had not filed any proof of service with the court despite being ordered to do so. *Id.* at *9-10. Here, as Robinson argues, service on Cail and the City was commenced prior to removal but was unsuccessful or defective for the reasons explained above. ECF 23 at 8.

**E. Cail is Entitled to Qualified Immunity.**

Robinson argues that "due to the nature of the [City of Davisboro] policies and procedures[,] … the authority imposed upon Defendant Cail at the time was mandatory." ECF 26 at 8. But as explained above, for purposes of qualified immunity, discretionary authority encompasses "all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." *Jones*, 857 F.3d at 851 (citation modified). Robinson cannot reasonably argue that Cail, the Davisboro Chief of Police, acted outside the scope of his discretionary authority with respect to "hiring, training and supervision of … officers such as [Durden]." *See* ECF 7 ¶ 2. Thus, Cail is entitled to raise the shield of qualified immunity.

To overcome the qualified immunity defense, Robinson must allege that (1) the facts, viewed in his favor, establish Cail's conduct amounted to a constitutional violation; and (2) the unconstitutionality of Cail's conduct was clearly established at the time of the alleged violation. [11] *Lewis*, 561 F.3d at 1291. This two-step analysis may be done in whichever order is deemed most appropriate for the case, yet "it is 'often beneficial' to analyze them sequentially." *King v. Pridmore*, 961 F.3d 1135, 1142 (11th Cir. 2020) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014)).

Supervisors like Cail are not subject to § 1983 liability under theories of respondeat superior or vicarious liability. *See Keith v. DeKalb Cnty.*, 749 F.3d 1034,

---

[11] A plaintiff can show that the illegality of the defendant's conduct was clearly established in one of three ways: (1) by pointing to a similar case with indistinguishable facts decided by the Supreme Court, Eleventh Circuit, or relevant state supreme court at the time; (2) by identifying a broader, clearly established legal principle that applies to the facts of the case; or (3) by showing the conduct was so plainly unconstitutional that prior case law is unnecessary. *Stalley v. Cumbie*, 124 F.4th 1273, 1284 (11th Cir. 2024) (collecting cases).

1047 (11th Cir. 2014). "'Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.'" *Christmas v. Harris Cnty., Ga*., 51 F.4th 1348, 1355 (11th Cir. 2022) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)). To establish a causal connection, a plaintiff must allege:

> a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; (2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

*Matthews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007) (quoting *Cottone*, 51 F.4th at 1360). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).

Robinson has not pleaded facts to establish Cail violated Robinson's constitutional rights. The amended complaint is devoid of specific factual allegations regarding Cail's conduct and does not allege that Cail personally participated in the traffic stop or directed Durden's actions. ECF 7. Instead, Robinson attempts to establish a causal connection by alleging that Cail "knew or *should have known* of … pervasive and persistent violations," including: (1) on February 10, 2022, a different police officer was involved in an excessive force incident; (2) on October 31, 2022, Durden was "intoxicated while on duty"; and (3) Durden allowed a "non-POST certified officer" to wear/use police equipment and "ride and participate in traffic stops," "at least one of

which occurred on January 16, 2023"—the date of the incident alleged in the complaint. *Id*. ¶¶ 18, 19 (emphasis added). Robinson does not allege any specific facts about what Cail knew about these "violations." The "misconduct" alleged is entirely insufficient to establish a history of widespread abuse that Cail had notice of, or a custom or policy of Cail's that resulted in deliberate indifference to constitutional rights. Robinson has only alleged one prior incident related to a constitutional violation, and Durden was not the officer involved. *See Piazza v. Jefferson Cnty.*, 923 F.3d 947, 957 (11th Cir. 2019) (internal citations omitted) ("[T]o prove that a policy or its absence caused a constitutional harm, a plaintiff must point to multiple incidents … or multiple reports of prior misconduct by a particular employee); *Marantes v. Miami-Dade Cnty.,* 649 Fed. App'x. 665, 672 (11th Cir. 2016) ("To establish the existence of a custom, the plaintiff must show a 'longstanding and widespread practice.'" (quoting *Craig v. Floyd Cnty., Ga*., 643 F.3d 1306, 1310 (11th Cir. 2011))); *Christmas,* 51 F.4th at 1355 ("isolated occurrences" cannot establish widespread constitutional violations).

Robinson vaguely asserts that "[h]ad Defendant Cail discharged his duties per the policies, Defendant Durden would have been terminated prior to the event complained herein, thus the incident would not have occurred." ECF 26 at 8. But as explained above, this is not the causal connection required for supervisory liability under § 1983. *See Matthews,* 480 F.3d at 1270. Robinson cannot establish a constitutional violation as to Cail and thus, Cail is entitled to qualified immunity.

Even if Robinson had sufficiently alleged a constitutional violation, he has not cited clearly established law that put Cail on notice that his alleged conduct was unconstitutional. Presumably to show that *Durden* was on notice that his conduct was

unconstitutional, Robinson asserted "[t]he *Fourth* Amendment has been around since the Constitution was drafted. As such it is without question that the violated Right was established." ECF 26 at 6. That doesn't come close to a citation of clearly established law putting Durden on notice. For the claims against Cail, it is meaningless.

Accordingly, Cail's motion to dismiss Robinson's § 1983 individual capacity claims against him is **GRANTED.**

## F. Robinson's State Law Claims Against Cail in his Individual Capacity are Barred by Official Immunity.

Robinson asserts state law claims against Cail for "Negligence (training, supervision, retention)." ECF 7 ¶¶ 13, 50-54. Cail argues that the state law claims against him are barred by official immunity. ECF 5 at 12-14; 25 at 13-14. Under the Georgia Constitution, "public employees may be subject to suit for negligent performance or nonperformance of their 'ministerial functions' or 'if they act with actual malice or with actual intent to cause injury in the performance of their official functions'; otherwise, they 'shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions.'" *Barnett v. Caldwell*, 302 Ga. 845, 847, 809 S.E.2d 813 (2018) (quoting Ga. Const., art. I, § II, para. IX(d)). A ministerial act is one that is "simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." *Wyno v. Lowndes Cnty.,* 305 Ga. 523, 527, 824 S.E.2d 297 (2019) (citation omitted). By contrast, a discretionary act calls for the exercise of "personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." *Id*. And actual malice denotes express malice and requires "a deliberate intention to do wrong." *Murphy v. Bajjani,* 282

Ga. 197, 203, 647 S.E.2d 54 (2007) (quoting *Merrow v. Hawkins*, 266 Ga. 390, 391-92, 467 S.E.2d 336 (1996)).

Robinson argues that the procedures for the City of Davisboro and the Georgia Department of Public Safety policies "direct mandatory action" for certain offenses and therefore "impose[] a ministerial duty." ECF 23 at 5-7; 23-2; 23-3. This is incorrect. Cail's decisions in training, supervising, and retaining Durden as an employee were discretionary because they required "personal deliberation and judgment" and called for Cail to "examin[e] the facts" surrounding Durden's conduct and job performance rather than to simply "execut[e] a specific duty." *Wyno.,* 305 Ga. at 527; *see Jackson v. Payne*, 326 Ga. App. 536, 538, 757 S.E.2d 164 (2014) ("[The Georgia Court of Appeals] has consistently held that the operation of a police department, including the degree of training and supervision to be provided its officers, is a discretionary governmental function as opposed to a ministerial, proprietary, or administratively routine function."). And Robinson does not allege anything to suggest that Cail acted with "actual malice" or "intent to injure" in undertaking his discretionary actions of training, supervising, and retaining Durden. *See generally* ECF 7.

Accordingly, the Court finds that the doctrine of official immunity bars Robinson's claims against Cail in his individual capacity for negligent training, supervision, and retention and those claims are **DISMISSED with prejudice**.[12]

---

[12] While Robinson alleges that the City's purchase of insurance waives official immunity (ECF 7 ¶¶ 8, 9), the Georgia Constitution expressly prohibits the waiver of official immunity. *See* Ga. Const. art. I, § 2, para. IX(d); *Gilbert v. Richardson*, 264 Ga. 744, 752-53, 452 S.E.2d 476 (1994).

**G. Robinson's Section 1983 Claims Against the City Fail.**

Robinson's § 1983 claims against the City fail because Robinson has not alleged an unconstitutional policy or custom or any other basis for municipal liability. The Supreme Court has placed strict limitations on municipal liability under § 1983. *Grech v. Clayton Cnty., Ga*., 335 F.3d 1326, 1329 (11th Cir. 2003). "A county's liability under § 1983 may not be based on the doctrine of respondeat superior." *Id*.; *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). Instead, only when the City's policy or custom causes a constitutional violation may a municipality be held responsible. *Grech*, 335 F.3d at 1329; *Monell*, 436 U.S. at 694. Specifically, "to impose § 1983 liability on a municipality, a plaintiff must [allege]: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

Robinson alleges, as he did for Cail, that the City "knew or *should have known* of Defendant Durden's history of violations" and "fail[ed] to discharge its duty to prevent the same." ECF 7 ¶ 57 (emphasis added). But as explained above, Robinson only alleges a single prior incident involving Durden, where he was "intoxicated while on duty." *Id*. ¶ 19. That leaves only the conduct alleged in the complaint and another officer's alleged excessive force incident. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability against a municipality." *Craig,* 643 F.3d at 1312 (citation modified). Robinson does not identify a municipal policy or custom that caused the alleged violation of his constitutional rights. Rather, the policies and procedures Robinson relies on support the opposite conclusion. *See* ECF 23 at 6 n. 34

(citing policies and procedures relating to the security of issued weapons and prohibiting consumption of intoxicants); 23-2; 23-3.

Accordingly, Robinson's § 1983 municipal liability claims are **DISMISSED without prejudice**.

**H. Robinson's State Law Claims Against the City Fail.**

Robinson also asserts state law claims against the City for "Negligence (training, supervision, retention)." ECF 7 ¶¶ 13, 50-54. The City argues that Robinson's state law claims against it are barred by sovereign immunity. ECF 5 at 14; 13 at 9-10. Under the Georgia Constitution, municipal corporations have sovereign immunity from suit on any state law claim unless: (1) it has purchased liability insurance that covers the plaintiff's claim; or (2) the claim arises from "the negligent performance of … ministerial duties." *See City of Alpharetta v. Vlass*, 360 Ga. App. 432, 433–34, 861 S.E.2d 249 (2021); O.C.G.A. § 36-33-1(a). "[I]mportantly, municipal immunity is not in the nature of an affirmative defense but rather speaks to the trial court's subject matter jurisdiction. Thus, the burden is on the plaintiff to establish a waiver of immunity." *Vlass*, 360 Ga. App. at 434 (citing *City of Tybee Island v. Harrod*, 337 Ga. App. 523, 524, 788 S.E.2d 122 (2016)).

For the same reasons discussed above, there is no question that the City's decisions regarding training, supervision, and retention are discretionary rather than ministerial. *See Jackson*, 326 Ga. App. at 538. The central issue for sovereign immunity is whether the City has purchased liability insurance that covers Robinson's claims. Robinson alleges and argues that the City "ha[s] purchased a policy of insurance affording coverage for [the] acts … complained of" and has thus waived sovereign

immunity. ECF 7 ¶¶ 8, 9; 23 at 4-5. The City attached its GIRMA liability policy to its second motion to dismiss and argues that its insurance policy "expressly excludes coverage for any loss arising from intentional misconduct." ECF 13 at 10. Robinson counters that his claims against the City are based in negligence and thereby not excluded under the policy.[13] ECF 23 at 4-5.

The City's insurance policy excludes coverage for: (1) "any claim arising out of or in any way connected with Bodily Injury or Property Damage reasonably expected or intended from the standpoint of the Member;" (2) "any claim arising out of or in any way connected with Personal Injury caused by or at the direction of the Member with the knowledge that the act would violate the rights of another and would cause Personal Injury;" and (3) "any claim arising out of or in any way connected with any dishonest, fraudulent or criminal act." ECF 13-1 at 34-35. The Court agrees with the City that to the extent Robinson seeks to "hold the City vicariously liable for Durden's alleged *intentional, criminal misconduct,*" the insurance policy does not cover such claims and thus sovereign immunity is not waived. *See* ECF 25 at 6; 7 ¶¶ 47, 55-57, 64. Accordingly, the City's motion to dismiss any vicarious liability claims against the City for

---

[13] Robinson also argues that the City attaching a copy of its insurance policy to its renewed motion to dismiss necessarily converts it to a motion for summary judgment. ECF 23 at 1. This is incorrect. On a motion to dismiss, in addition to the complaint, the Court "may also consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity." *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Brooks,* 116 F.3d at 1369). The same is true of a facial jurisdictional attack. *See* ECF 25 at 5 ("[T]he City Defendants bring a 'facial attack' on Plaintiff's amended complaint."); *Lawrence v. United States,* 597 Fed. App'x 599, 602 (11th Cir. 2015) ("[D]istrict courts may properly consider documents attached to a motion to dismiss in considering a facial attack if the documents are central to the plaintiff's claim and their authenticity is not disputed."). Here, the City's insurance policy was incorporated by reference in the amended complaint and attached to the City's renewed motion to dismiss. ECF 7 ¶ 8; 13-1. It is central to Robinson's state law claims against the City and its authenticity is undisputed. *See generally* ECF 23 at 4-5.

Assault and Intentional Infliction of Emotional Distress on sovereign immunity grounds is **GRANTED**.

The City next argues that Robinson fails to state a claim against the City for negligent training, supervision, and retention. ECF 25 at 8-9. The Court agrees. Robinson does not allege how the City's training was deficient or plead any causal connection between Durden's training and the traffic stop at issue where, as here, Robinson claims Durden intentionally violated the City's policies and procedures. ECF 7 ¶¶ 10-11, 45, 66; *see* Charles R. Adams III, Georgia Law of Torts § 7:6 (2017) ("An employer may be liable for failure to adequately train an employee, but the failure to provide adequate training must be causally related to the plaintiff's injuries."). And Robinson has alleged no facts to suggest the City knew or should have known that Durden posed a risk of harm to others based on any of Durden's tendencies or propensities. *See Monroe v. Universal Health Servs., Inc.,* 277 Ga. 861, 863, 596 S.E.2d 604 (2004) ("[A] defendant employer has a duty to exercise ordinary care not to hire or retain an employee the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable from the employee's 'tendencies' or propensities that the employee could cause the type of harm sustained by the plaintiff."). As discussed, Robinson simply alleges that on one prior occasion in 2022, Durden was "intoxicated while on duty." ECF 7 ¶ 19. But Robinson does not allege that Durden was intoxicated during the traffic stop at issue here, and thus the prior incident could not make the conduct which allegedly caused Robinson's injury reasonably foreseeable. Nor could Durden's allowing "a civilian … to ride and participate in traffic stops" from "November 2022 to January 2023" make it reasonably foreseeable that Durden would

conduct an unlawful traffic stop outside his jurisdiction. *Id*. But most importantly, Robinson's conclusory allegations that the City "knew or should have known of Defendant Durden's history of violations" are entirely insufficient in the absence of specific facts. *Id*. ¶ 57.

Accordingly, Robinson's state law claims against the City for negligent training, supervision, and retention are **DISMISSED without prejudice**.

### IV. CONCLUSION

For the foregoing reasons:

1. Durden's motion to dismiss (ECF 15) is **DENIED in part** and **GRANTED in part**. Robinson's state law claims and § 1983 claims arising under the Fourth Amendment against Durden in his individual capacity may proceed for further factual development. All other constitutional claims against Durden are **DISMISSED without prejudice**.

2. Cail and the City's motions to dismiss for failure to effect proper service (ECF 13) are **DENIED.**

3. Cail's motion to dismiss (ECF 13) is **GRANTED**. Robinson's § 1983 claims against Cail in his individual capacity are **DISMISSED with prejudice** on qualified immunity grounds and his state law claims against Cail are **DISMISSED with prejudice** on official immunity grounds.

4. The City's motion to dismiss (ECF 13) is **GRANTED**. Robinson's § 1983 claims and his state law negligence claims against the City are **DISMISSED without prejudice** for failure to state a claim. Robinson's state law intentional act claims against the City are **DISMISSED** on sovereign immunity grounds.

**SO ORDERED**, this 3rd day of October, 2025.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT